St. Louis, Iron Mountain & Southern Railway Company *v.* Carter.

Opinion delivered February 2, 1914.

1.    Master and servant—injury to servant—negligent act of other servant—question for jury.—A brakeman on defendant railway

company's freight train, while carrying a block of ice from a refrigerator car to the caboose, threw the same from the train, and it struck and injured plaintiff, another employee of the railway company, who was standing on the ground. *Held*, it being the duty of the brakeman to see that no loose objects fell and injured persons near the track, and to assist in looking after the train, and plaintiff, being where he had a right to be, the question of the negligence of the railway company was one for the jury, (Page 279.)

2. APPEAL AND ERROR—REFUSAL TO GIVE INSTRUCTION.—It is not error to refuse to give an instruction covered by an instruction already given. (Page 281.)

3. MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.—A servant of a railway company is not guilty of contributory negligence, when he was injured by being hit by a piece of ice thrown from the train, when he was standing in a place where a reasonably prudent person might stand under like circumstances, and there was no custom of throwing ice from trains at that place. (Page 281.)

4. MASTER AND SERVANT—INJURY TO SERVANT—PERMANENT INJURIES.— Where plaintiff was injured by being struck by a piece of ice thrown from a moving freight train, evidence of permanent injury held sufficient to warrant a submission of that question to the jury. (Page 282.)

5. TRIAL—DISAGREEMENT OF JURY—RIGHT OF TRIAL JUDGE TO DIRECT JURY AS TO VERDICT.—Where a jury has been unable to agree, the trial court may detail to the jury the ills attendant upon a disagreement, and the importance of coming to an agreement, and warn them not to be stubborn, but to lay aside all pride of opinion and consult with each other, and give due regard and weight to the opinion of their fellow jurors. (Page 284.)

6. TRIAL—DISAGREEMENT OF JURY—RIGHT OF TRIAL JUDGE TO DIRECT JURY AS TO VERDICT.—When a jury is unable to agree, the trial judge should not by threat or entreaty, attempt to influence the jury to reach a verdict. He should not, by word or act, intimate that they should arrive at a verdict which is not the result of their free and voluntary opinions, and which is not consistent with their consciences. (Page 285.)

7. TRIAL—VERDICT—ADMONITION OF COURT—ERROR.—In an action for damages against a railway company, due to personal injuries, the jury agreed that defendant was guilty of negligence, but could not arrive at a verdict as to the amount of the damage. *Held*, remarks of the trial judge, urging the jury to agree, were erroneous. (Page 286.)

8. APPEAL AND ERROR—HARMLESS ERROR.—The Supreme Court re-

verses only for errors which are prejudicial to the rights of the appellant. (Page 287.)

9.   TRIAL—ADMONITION OF COURT—HARMLESS ERROR.—Although the trial court, in urging a jury to agree upon the amount of damages in a cause, committed error, the cause will not be reversed when the verdict was reasonable, supported by the evidence, and it nowhere appears that the error was prejudicial. (Page 287.)

Appeal from Independence Circuit Court; *R. E. Jeffery,* Judge; affirmed.

STATEMENT BY THE COURT.

Al Carter brought this suit against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for personal injuries sustained by him while in the employ of said company, by reason of its negligence. The facts and circumstances attending the injury, as detailed by the plaintiff himself, briefly stated, are as follows:

On the 24th day of July, 1912, he was foreman of a grading gang of the railway company and was at work about a mile above Swifton, in Jackson County, Arkansas. He saw a freight train approaching and directed his crew to leave the track and get out of the way of the approaching train. He left the dump on which he was working and stood with one foot on the edge of the dump about ten feet away from the passing train. As he was standing on the edge of the dump he saw a piece of ice which looked to him like it was falling from the train. He turned and tried to get away, but the ice, as it struck the ground, bounded in the direction the train was moving and struck him on the head, severely injuring him. On cross examination, Carter denied that he had motioned to the brakeman to throw him the ice, and says that he did not see it until it began to fall from the train. Other witnesses for the plaintiff testified that they saw the ice when it struck Carter and that the ice would weigh about fifty pounds; that Carter was rendered unconscious by the blow; that the ice hit him on the left shoulder and side of his head; that the best they could tell there were two men up on the car and it looked like they

pushed or kicked the ice off. They said that Carter did not motion the train crew to throw the ice to him. It was also shown by the plaintiff that he had instructions to clear the track of his men when he saw a train approaching but not to take them too far away. This was in order that he might be able to get them back to work as soon as possible after the train passed. The plaintiff was standing clear of the moving train and would not have been hurt by it if the ice had not been thrown from the train. About half of the train had passed when the plaintiff was struck with the ice.

J. L. Oglesby testified for the defendant as follows: In the month of July, 1912, I was brakeman on a fast freight train that was carrying peaches and canteloupes from Argenta to Hoxie. I dropped a piece of ice off at a point beyond Swifton, where some section men were working, and it hit the ground and bounced a time or two and struck some one on the ground. We had run out of ice in the caboose, and I had gone up over the train to get some out of the car, and on my way back to the caboose with the ice this man on the ground motioned to me to let him have it, and I dropped it off. The conductor saw me on my way for the ice and was on top of the train about a car length from me when I dropped the ice off. The rules of the railway company provided that while on trains brakemen are under the direction of the conductor; that it is their duty to assist the conductor in all things necessary for the safe and prompt movement of the train. The brakemen are at all times under the direction of the conductor. It is also the duty of the brakeman, if he finds running boards or anything that is likely to fall off the train, to throw the same off of the train between stations at a point where they are not likely to hurt any one. He also stated that a part of the brakeman's duties was to keep a lookout and see that everything was running safely. I suppose the conductor was looking at me when I threw the ice off, but he never gave me any instructions in regard to it. I did

it as a matter of accommodation to the section men at work on that hot day.

Testimony was also adduced by the railway company tending to show that Carter had been directed to get his men and team clear of all moving trains, and that this direction included himself. It was also shown that it was against the rules of the company for the train crew to take ice out of the refrigerator cars for any purpose whatever.

Other evidence will be referred to in the opinion. The jury returned a verdict for the plaintiff in the sum of $4,500, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*E. B. Kinsworthy, McCaleb & Reeder* and *T. D. Crawford,* for appellant.

1. Instruction No. 3 on the court's own motion was error. It ignores the defense made by defendant. The evidence shows the negligence complained of was that of a brakeman not within the scope of his authority. 81 Ark. 372.

2. When a master promulgates a rule for the safety of servants and one is injured while in violation of this rule, and on account thereof the court will declare him, as matter of law, guilty of contributory negligence. 96 Ark. 464.

3. The question whether the negligence of the brakeman was within the scope of his authority was for the jury. 81 Ark. 368; 87 *Id.* 540; 87 *Id.* 524.

4. The court erred in its remarks to the jury. 78 Ark. 132; 58 *Id.* 282.

*Hal L. Norwood* and *Grant & Mack,* for appellee.

1. The case of 81 Ark. 372 does not apply. In that case the injured party was a trespasser. In this case the injured man was not a trespasser; he was near the track in the discharge of his duty. 4 Labatt, § 1566 (2 ed.), 4727.

2. The test is whether the master had the right to

control the action of the person doing the wrong.   1 Bailey, Per. Injuries (2 ed.), 31; 132 U. S. 518.

3.   The company must exercise ordinary care to avoid injuring persons rightfully on its premises and near the track.   96 Ark. 472; 94 *Id.* 251; 63 *Id.* 640.

4.   Contributory negligence is no defense where the peril was discovered in time to avoid injury.   99 Ark. 422; 86 *Id.* 590.   The brakeman saw Carter and knew his perilous position.   86 Ark. 590; 5 Thompson on Neg., § 5403.

5.   No specific objection was made to the court's statement to the jury.   93 Ark. 214; 96 *Id.* 540; 98 *Id.* 234.   No prejudice, however, resulted and the burden was on appellant to show prejudice.   97 Ark. 86; 98 *Id.* 86.

6.   It is negligence for an employee to break the rules of the company.   96 Ark. 464.   The verdict is not excessive.

HART, J., (after stating the facts).   It is first contended by the defendant that the court erred in giving to the jury on its own motion instruction No. 3, which is as follows:

"If you find from a preponderance of the evidence in this case that, at the time in question the plaintiff was at work in the employment of the defendant as foreman of a grading crew of laborers on its line of railway; that, while he was so engaged, one of defendant's freight trains was about to pass, and he stepped to the side of the track and occupied a position where his duties required him to be, and while in such position and the train was passing the defendant's employees and servants operating the train, negligently, and without the exercise of ordinary care and caution, caused, or permitted, a piece of ice to fall from the top of one of the cars in the train, which struck and injured plaintiff, if you find he was injured, then, you should find for the plaintiff; unless, however, you should further find that plaintiff, by his own acts of negligence contributed to the injury complained of, in which event you should find for the defendant."

Counsel for defendant contend that the instruction was erroneous because the injury complained of was the result of the personal wrong of the brakeman who threw the ice off while acting outside of the scope of his authority. In support of their contention, they rely on the cases of *St. Louis Southwestern Railway Company* v. *Bryant,* 81 Ark. 372, and *St. Louis, Iron Mountain & Southern Railway Company* v. *Lavendusky,* 87 Ark. 540; but we do not think these cases sustain the position taken by counsel for defendant. In both cases it was held that, at the time the injury complained of was inflicted, the employees of the railway company were not in the exercise of any duty they owed to their employers, and this was made the turning point in both cases, for in each case the plaintiff was a trespasser. The plaintiff being a trespasser, the court said the railroad company owed him no positive duty of care and only the negative duty to exercise ordinary care not to injure him after his perilous position was discovered.

In the Bryant case the foreman of a bridge gang threw a water-cooler from a construction train in which he was riding and hit a trespasser on the track. He was not engaged in operating the train, and his duties did not require him to keep a lookout for persons on the track. In the Lavendusky case, the yardmaster threw a piece of coal off of a freight train and hit the plaintiff, who was a trespasser on the railway track. The court held that the act of the yardmaster was a tort, outside of the scope of his authority, for which the railway company was not liable, and that plaintiff being a trespasser, the railway company owed him no positive duty to exercise ordinary care to protect him from injury. The case of *Fletcher* v. *Baltimore & P. Rd. Co.,* 168 U. S. 135, was cited and distinguished. In the Fletcher case the plaintiff was injured by a stick of wood thrown from a passing train by one of the servants of the railroad company. There was evidence tending to prove that it had been the custom of the employees of the railroad to throw off pieces of firewood while the train passed such points on

the railroad as were nearest to their homes whence the wood was carried off by some members of their families waiting to receive it. The court held that the railroad company is bound to see to it that no dangerous acts which may result in injury to persons on the highway shall be committed by persons who are on its trains as employees. The court also held that whether the company was, under the circumstances, negligent in permitting its employees to throw wood from the train was a question of fact for the jury.

In *Savannah, F. & W. R. Co.* v. *Slater,* 92 Ga. 391, 17 S. E. 350, it was held that the railway company was liable for an injury to one standing on a public crossing by a stick of wood negligently thrown off of a passing engine by the fireman to some negroes for the purpose of making them a fire, and in the absence of any evidence to the contrary that the inference was that the injury was done by the fireman while acting within the scope of his duty.

In the case at bar, the brakeman admits that he took the ice from the refrigerator car for the use of the train crew, and that he was carrying it to the caboose for that purpose when the plaintiff motioned to him to throw it to him and he did so. Manifestly, then, the purpose of the brakeman in getting the ice from the refrigerator car was not to give it to the plaintiff. The ice was gotten for the use of the crew of the train, and the thought of giving it to the plaintiff occurred to him, as he states, when the plaintiff motioned him to throw it. The brakeman testified that it was a part of his duty to assist the conductor in all things necessary for the safe and prompt movement of the train; that it was his duty to keep a lookout and to see if everything was running safely and that if he found anything loose on the train to throw it off between stations at a point where he would not injure any one. According to the testimony of the plaintiff, he did not motion the brakeman to throw the ice, and did not know it was thrown or pushed from the train until he saw it about to leave the top of the car. Although

the brakeman violated the rules of the company when he took the ice from the bunkers of the refrigerator car to carry it to the caboose for the use of the train crew, still he was, according to the evidence adduced in behalf of the plaintiff guilty of negligence in pushing or letting the ice fall from the train at a point where it was likely to injure another servant of the company at work, and to whom the company owed the positive duty of exercising ordinary care to refrain from injuring. The fact that a servant pursuing his own pleasure neglects also to perform some duty which rests upon the master, and which is a part of the ordinary duties of the servant to perform for the master, may make the master responsible, if injury happens to another as a consequence of that neglect. We do not think what we have said at all disputes the principle applicable when the servant, in the discharge of his ordinary duties, steps aside therefrom to accomplish some end wholly his own, and, in doing so, inflicts injury. In such cases we have uniformly held that the master is not liable. It being the duty of the brakeman, according to his own testimony, to look after the train and see that no loose objects were left on it which would likely fall off and injure persons on the track, and it also being his duty to keep a lookout and to assist the conductor in all things necessary for the safe and prompt movement of the train, and the plaintiff at the time he was injured being rightfully in the place where he stood, we think the question of the negligence of the railway company as well as the contributory negligence of the plaintiff were jury questions, and that the court did not err in giving the instructions. See *Willis* v. *Maysville & Big Sandy Ry. Co.*, 122 Ky. 658, 13 Am. & Eng. Ann. Cas. 74; *L. & N. Ry. Co.* v. *Eaden* (Ky.), 6 L. R. A. (N. S.) 581.

It is next contended that the court erred in refusing to give instruction No 4-A, at the request of the defendant. The instruction is as follows:

"If you believe from a preponderance of the evidence in this case that the ice which caused the injury

to plaintiff was thrown or pushed off the car for the purpose of giving it to plaintiff and his fellow-workmen, then the brakeman, in so doing, was not acting within the line of his duty or the scope of his authority, and your verdict should be for the defendant.''

The theory of the defendant was that the brakeman, while carrying the ice from the refrigerator car to the caboose, saw the plaintiff, who motioned him to throw the ice to him, and that the brakeman did so, at his request, solely for his accommodation. At the request of the defendant the court did give instruction No. 5, which is as follows:

''If you find from the evidence that plaintiff requested, by signal or otherwise, the brakeman on top of the train to deliver to him a piece of ice, and that the brakeman, in pursuance of such request, threw the ice which struck plaintiff, then, in this event, plaintiff contributed to his own injury, and you should find for the defendant.''

This instruction, in plain terms, told the jury that if the brakeman threw the ice to the plaintiff at his request, the plaintiff was not entitled to recover, and this is all that the defendant could have gained by the giving of instruction No. 4-A.

It is next contended by counsel for defendant that the court erred in refusing to give instruction No. 2-A asked by it.

''If you believe from the evidence in this case that the plaintiff was standing near the railway track at the time of the injury, and at a place where it was dangerous for him to stand while trains were passing on said track, and that it was not necessary for him to stand at such place while such trains were passing, then he would be guilty of contributory negligence, and your verdict should be for the defendant.''

We do not think the court erred in refusing to give this instruction. The testimony on the part of the plaintiff showed that he had been in the employment of the railway company for some time as foreman of the section

gang, and that many trains passed over the line of railroad every day; that he stood in about the same position that he usually did when trains passed; that he was far enough away from the track to be out of danger from the passage of the train itself and from any broken or swinging doors that might be loose on the sides of the cars. There is no testimony tending to show that there was any custom of throwing ice from the cars, nor could the plaintiff reasonably expect that any would be thrown therefrom. The instruction, as asked, told the jury that if they found that it was dangerous for him to stand at the place where he was injured while trains were passing, and that it was not necessary for him to do so, then he would be guilty of contributory negligence. It is true the place turned out to be a dangerous one at the particular time the accident occurred, but the place was not so obviously dangerous that a reasonably prudent person under all the attendant circumstances would not have occupied it. The instruction is faulty in that it did not allow the jury to take into consideration the fact that the plaintiff in standing at the place where he was injured was doing what a reasonably prudent man might have done under like circumstances.

It is next insisted by counsel for defendant that the court erred in submitting to the jury the question of the permanency of the injury of the plaintiff. The plaintiff was injured by a piece of ice which was shoved or thrown off of the top of the moving train, and it necessarily had the velocity of the train. When the ice hit the ground it bounded and struck the plaintiff on the side of the head and shoulder. It raised a large swelling on his head and shoulder, and as a result of the blow he is now afflicted with a nervous disorder which the physicians call traumatic neurasthenia. He was injured on the 24th day of July, 1912, and on the 21st day of April, 1913, the date of the trial, plaintiff was still suffering from this disease. His eyesight was not good; his digestion was greatly impaired, and there was a decided shock to his nervous system, which several physicians who had examined and

treated him said could only be cured, if cured at all, by complete rest and treatment in a sanatarium for two years. It is true that Doctor Bentley, on his cross examination, stated that he did not think the plaintiff was permanently injured, but in his direct examination he stated that it was questionable whether he would ever fully recover and be able to go to work again, and that it might be a couple of years before he was entirely well, and perhaps longer; that in nervous diseases like that the patient is very apt to have a relapse and get worse. Doctor Jernigan, who treated the plaintiff longer than any of the other physicians, stated that there is less probability that the plaintiff would recover permanently than would be in the case of a younger man. Plaintiff at the time he was injured was forty-seven years of age. Doctor Jernigan stated that plaintiff's nervous condition did not seem to be any better at the time of the trial than when he first began to treat him; that this nervous condition or shock was due to a concussion of the brain, and that it was impossible to state just what amount of injury there was. Doctor Dorr testified that he had examined the plaintiff, and that he was afflicted with traumatic neurasthenia; that the treatment for such disease is to remove the cause, and the best course is for the patient to have a change of scene and to rest; that about 50 per cent of the patients suffering from this disease recover under proper treatment, and the remaining fifty go through life with it; that sometimes they get better and relapse, and sometimes become insane, and sometimes afflicted with other diseases. Under this testimony, we do not think it can be said that there was no testimony tending to show that the plaintiff was permanently injured. *St. Louis, I. M. & S. Ry. Co.* v. *Osborne,* 95 Ark. 310.

It is finally insisted by counsel for defendant that the court erred in certain instructions to the jury. The jury had reported to the court that they had agreed that the defendant was liable but could not agree upon an amount of damages. Whereupon, the court said:

"Gentlemen, the most important part of your labors has been performed in arriving at the conclusion you have already reached. Of course, you have to be true to your conscience, but it is the duty of the juries to arrive at verdicts, if possible. It would be an awfully expensive thing to have to go through the trial again, although, of course, that would not be proper for you to consider in arriving at your verdict. I wish you would go back and try to get together and arrive at a verdict. I have to reach a decision myself on everything that comes up. I know you are trying to do what is right, but I wish you would see if you can not arrive at a verdict within the next few minutes."

*By a Juror:* We can reach a verdict in ten minutes if we can at all.

*By the Court:* Well, gentlemen, you have to give and take, and, of course, you have to reason with each other, and have to be considerate, and a very good rule to go by, in my judgment, in reaching your verdict, is like reaching any other conclusion that comes up in your personal affairs. Whenever you find that a question comes up in your community, and you are on one side, and you find nearly everybody else with you, you can reasonably expect that you are on the right side; if you and half of the community are divided, one against the other, often there is still reason to believe that you are on the right side; but, if you find that all your neighbors are against you, then you do not have to conclude that you are necessarily on the right side.

I wish you would try, as conscientiously as you can, to arrive at a verdict within the next few minutes, and let us know whether you can reach it or not.

The rule is well settled in this State that the trial court may detail to the jury the ills attendant on a disagreement and the importance of coming to an agreement. The trial judge should not, by threat or entreaty, attempt to influence the jury to reach a verdict. He should not, by word or act, intimate that they should arrive at a verdict which is not the result of their free

and voluntary opinion, and which is not consistent with their conscience. He may, however, warn them not to be stubborn and to lay aside all pride of opinion and to consult with each other and give due regard and weight to the opinion of their fellow-jurors.

In the case of *Commonwealth* v. *Tuey*, 8 Cushing (Mass.) 1, which is a leading case on the subject, an instruction which in effect told the jury that if any of the jury differed in their views of the evidence from a large number of their fellows, such difference of opinion should induce the minority to doubt the correctness of their own judgments and lead them to a re-examination and closer scrutiny of the facts in the case for the purpose of revising and reconsidering their preconceived opinion, was held, in an opinion delivered by Mr. Justice Bigelow, not to be improper, and that such instruction was not calculated to mislead the jury. The learned justice said, in substance, that a proper regard for the judgment of other men will often greatly aid us in forming our own, and that when we are called upon to act with others, as in the case of jurors, the single object to be effected is to arrive at a true verdict, and that this can only be done by deliberation, mutual concessions when they can be made without a sacrifice of conscientious conviction, and a due deference to the opinion of each other.

This decision was approved in the following cases: *State* v. *Smith*, 49 Conn. 376; *Allen* v. *United States*, 164 U. S. 492; *Gibson* v. *Railway Company*, 55 Minn. 177, 56 Northwestern, 686. It was also approved in later decisions by the Supreme Court of Massachusetts, but in the case of *Highland Foundry Company* v. *Railway Company*, 199 Mass. 403, 86 N. E. 437, the court said the Tuey case was regarded by the profession as going to nearly, if not quite, the extreme limit, and sustained an exception to an instruction which the court held went further than the instruction in the Tuey case.

In the case at bar a majority of the court think the instruction went further than the rule laid down in the Tuey case, and that it created a false standard by which

the jury should be governed in arriving at a verdict;
that the opinions formed by a community are often the
result of passion, prejudice and a too hasty conclusion
reached without due consideration of all the facts bear-
ing on the subject; that, as said by Judge Brewer in
*State* v. *Bybee,* 17 Kan. 462, it is the theory of jury
trials that a verdict is the expression of the concurrence
of individual judgments rather than the product of mixed
thoughts, and that from the testimony each individual
juror should be led to the same conclusion and that this
unanimous conclusion of twelve different minds is the
certainty of fact sought in the law; that, in the language
of Judge Cooley, in *Goodsell* v. *Seeley,* 46 Mich. 623, 10
N. W. 44, the law contemplates that the jurors should by
their discussions harmonize their views, if possible, but
not that they shall compromise, divide and yield for the
mere purpose of an agreement; that the sentiment or
notion which permits this tends to bring the jury trial
into discredit and to convert it into a lottery.   There-
fore, the majority of the court are of the opinion that
the tendency of the court's remarks was to create an im-
pression upon the minds of the jury that, having agreed
upon the right of the plaintiff to recover, the jurors
need not be so careful in fixing the amount which might
be arrived at as a result of an arbitrary compromise of
the individual views of the jurors.   See *O'Neal* v. *Rich-
ardson,* 78 Ark. 132; *Southern Ins. Co.* v. *White,* 58 Ark.
277; *Jackson* v. *State,* 94 Ark. 169; *St. L., etc., R. Co.* v.
*Devaney,* 98 Ark. 83.   While I do not commend the lan-
guage used by the court, I do not believe that some mem-
bers of the jury voted for a higher amount of damages
because of the remarks of the court.   The jury had
already reached the conclusion that the railway company
was liable; therefore, there was no misunderstanding as
to the law of the case given by the court, and in the appli-
cation of the law, as given by the court, to the facts in
the case, they found against the defendant on the ques-
tion of negligence, and I do not believe when the evi-
dence in regard to the character and extent of the plain-

tiff's injuries is considered in connection with the amount of the verdict arrived at by the jury, that some members of the jury sacrificed their conscientious opinion and reached an agreement on account of the remarks made by the court.

It does not follow, however, because the majority of the court is of the opinion that the instruction was erroneous that the judgment should be reversed on that account; for this court only reverses for errors that are prejudicial to the rights of the appellant. As we have already seen, the plaintiff was injured on the 24th day of July, 1912, and the case was tried on the 21st day of April, 1913. During the time between which plaintiff was injured and the date of the trial, several specialists had carefully examined him, and he had been attended by at least two reputable physicians. All these physicians testified that he was suffering with traumatic neurasthenia, and they all stated that it was doubtful if he would ever recover. They said that it would require at least two years' complete rest from work and a stay at a sanatorium to effect a recovery; that in a great many instances the patient would suffer a relapse and would become insane or afflicted with other diseases; that the cost of treatment at a sanatorium varied from one hundred to several hundred dollars per month. The plaintiff was forty-seven years of age at the time he was injured, and the physicians testified that at that age his chances of recovery were less than that of a younger man. The testimony shows that shortly before the accident occurred the plaintiff had been examined for life insurance and was found to be in a healthy condition. Since he received his injuries he has not been able to work at all and will not be able to do so under two years. One of the physicians who examined and treated him had already charged him fifty dollars and intends to charge him a larger amount. One of them had charged him one hundred dollars for treatment. He was making $75 per month at the time he was injured, and had regular employment. Therefore, his loss of wages for two years

would amount to $1,800. The least amount for which he could be treated in a sanatarium was testified to be $100 per month, and for two years' treatment this would amount to $2,400. It was also shown that the plaintiff had suffered considerably since he was injured. There is no testimony contradicting this except that of one physician who made an examination of plaintiff at the instance of the railway company, and he does not pretend to have any accurate knowledge of the extent and character of the plaintiff's injuries. So it may be said the jury having, under proper instructions, found that the defendant was liable, there can be no reasonable grounds to believe that a jury of average judgment, after considering the evidence introduced, would have allowed plaintiff a less sum than that named in the verdict, had the remarks of the court, which a majority of this court have held to be erroneous, not been made. Therefore, the error was not prejudicial to the rights of the defendant. *St. Louis, I. M. & S. Ry. Co.* v. *Adams,* 74 Ark. 326.

It follows that the judgment must be affirmed.