CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
v. SIMS.

Opinion delivered December 3, 1923.

1. CARRIERS—DEMAND FOR CARS.—In an action by a shipper against a railroad company for discrimination and failure to furnish cars, whether or not the demand for cars was so great that the company could not have anticipated the demand, or, by the exercise of reasonable care, have supplied the cars, *held* for the jury, under the evidence.

2. CARRIERS—SHIPPERS ON BRANCH LINES.—Shippers on branch or lateral lines of a railroad are entitled to the same kind of treatment, in the distribution of cars for shipment, as accorded to those on the main line.

3. CARRIERS—DISCRIMINATION IN FURNISHING CARS.—In an action by a shipper against a railroad company for discrimination and failure to furnish cars during a certain period, evidence *held* to warrant a verdict for a shipper who failed to receive the cars demanded by him, where local shippers and shippers on the main line received sufficient cars of the same class required by plaintiff for their needs during the same period.

Appeal from Prairie Circuit Court, Southern District; *George W. Clark,* Judge; affirmed.

STATEMENT OF FACTS.

J. F. Sims, under the firm name of J. F. Sims Hay Company, sued the Chicago, Rock Island & Pacific Ry. Co., to recover damages for discrimination and the failure to furnish cars in which to ship his hay.

According to the testimony of J. F. Sims, in the year 1920 he was engaged in selling hay, under the firm

name of J. F. Sims Hay Company, at Des Arc, Ark.
He made a contract with the Hazen Hay Company to
deliver to it 1,500 tons of hay at $15 a ton. This would
amount to about 100 cars. The hay was purchased by
the Hazen Hay Company, to be shipped to the United
States Government at Camp Taylor, in Kentucky. The
plaintiff was to begin shipping the hay about the 15th
of July, 1920. The plaintiff put in a requisition for cars,
and got nine cars during the month of July. He was fur-
nished 12 cars during the month of August. Des Arc is
situated on branch line of the Chicago, Rock Island &
Pacific Ry. Co., which runs from Searcy to Stuttgart,
Ark., and crosses the main line at Mesa, Ark. Hazen
is situated on the main line about 25 miles from Des Arc,
and is the greatest center in the State for the shipment
of hay. After the railroad company failed to furnish
the plaintiff cars for the shipment of his hay under his
contract with the Hazen Hay Company, he was obliged
to sell part of his hay locally and to sell the balance at
a reduced price. The difference between what he got for
it and what he would have received for it under the con-
tract price, if the railroad company had furnished him
cars for shipping the hay under his contract, was
$3,612.51. Other shippers were getting cars at Des Arc
for shipping their products during this same period of
time. The plaintiff had sufficient hay with which to fill
his contract if the railroad company had furnished him
cars.

S. C. Sims was also a witness for the plaintiff.
According to his testimony, he was a brother of J. F.
Sims, and the owner of the Hazen Hay Company. He
agreed to pay his brother $15 a ton for 1,500 tons of
hay, and would have taken the hay if the plaintiff had
furnished it to him. During the months of July, August
and September, in 1920, S. C. Sims did not get all the
cars that he needed, but he got a sufficient number to
handle his business.

J. A. Hale was also a witness for the plaintiff. He lived at Hazen, Ark., and was engaged in shipping hay, in 1920, from points on the Chicago, Rock Island & Pacific Ry. Co. During the months of July, August, and September, 1920, this railway company furnished him a total of 107 cars.

On his direct examination he stated that these were all the cars he needed. On his cross-examination he stated that he might have needed a few more cars, but that he does not remember that there was any serious car shortage on this railroad during that year. Further along in his cross-examination he repeated that, while the car situation was somewhat acute, he did not have any car shortage during the period of time referred to. On redirect examination he again stated that, during this same period of time, he got all the cars he needed, both on the main line and on the branch line on which Des Arc is situated.

According to the testimony of I. T. Sims, he lived at Hazen, and shipped hay in July, August and September, 1920, on both the Rock Island and Cotton Belt railroads. During this period of time he got all the cars he needed from both railroads. He was asked the direct question if, in shipping hay from Hazen during the months of July, August and September, 1920, over the Rock Island and Cotton Belt railroads, he got all the cars that he ordered and needed for his shipments, and replied, "Yes sir." He stated that Hazen was the largest shipping point for hay in that section of the country.

R. W. Bowen was also a witness for the plaintiff. According to his testimony, he was engaged in the hoop and lumber business at Des Arc in July, August and September, 1920. He shipped his products in box-cars, which are also used for the shipment of hay. During this period of time he had no trouble in getting cars in which to ship his products. His stenographer also testified that during the same period of time they practically got all the cars they needed.

Chas. Franz was engaged in the stave and heading business during the year 1920, at Des Arc, and shipped his products in box-cars of the same sort that were used in shipping hay. He had practically no trouble in getting sufficient cars for his business.

According to the testimony of the superintendent of transportation of the Chicago, Rock Island & Pacific Ry. Co., there was a car shortage during the months of July, August and September, 1920, and this car shortage was general throughout the United States. The United States Government was operating the railroads at this time and this railway company could not have provided itself with additional box-cars, except through the car service section of the government at Washington. When the shortage of box-cars became acute in 1920, an effort was made, through the proper authorities at Washington, to remedy the matter. The testimony of the superintendent was corroborated to an extent by the station agent at Hazen.

On cross-examination the station agent stated that the car shortage in July and September was not acute. There would simply be a delay of a few days when cars were ordered for shipping hay at Hazen.

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Buzbee, Pugh & Harrison,* for appellant.

The court erred in not directing a verdict for the defendant. There was no discrimination. 77 Ark. 362.

*Gregory & Holtzendorff,* for appellee.

The verdict of the jury was supported by the testimony. 102 Ark. 200; 101 Ark. 90; 97 Ark. 486; 87 Ark. 109; 97 Ark. 438. The case was properly submitted to the jury. 144 Ark. 515.

HART, J., (after stating the facts). The only assignment of error is that the undisputed testimony shows that there was unprecedented demand for cars, which the railway company was unable to supply. We

are convinced, from reading the testimony, that it was a question for the jury as to whether or not the demand upon the railway company for cars was so sudden and so great that the railway company could not reasonably have anticipated it, and could not, by the exercise of ordinary care, have supplied the demand.

In the case of *St. L. I. M. & S. R. Co.* v. *Keefe,* 113 Ark. 215, it was held that the fact that the defendant was short of stock-cars on a certain division of its railway system is no defense to an action for damages for failure to furnish stock-cars, and does not show that the carrier exercised ordinary care to supply the demand of the shipper.

It was further held that, in an action for damages for failure to furnish freight-cars, the railway company must show, to relieve itself from liability, that it could not, by the exercise of ordinary care, have supplied the cars demanded by the shipper.

Shippers located on branch or lateral lines of a railroad are entitled to the same kind of treatment as accorded to those whose business is situated on the main line of the railroad. The shipper located on the branch line is entitled to be furnished cars without discrimination against him, for the reason that the railroad company has control over the branch lines as well as the main line of its railroad, and can send cars anywhere over its system. In *Dickinson* v. *Robertson,* 144 Ark. 515, it was held: "Where the evidence established that, owing to the exigencies of war, a carrier was unable, during certain months, to furnish the usual amount of cars to its shippers, but that it was able to fill from forty to seventy-five per cent. of the orders received for cars, proof that the carrier only furnished twenty-two per cent. of the cars ordered by the plaintiff during those months justified the submission to the jury of the issue whether the carrier had discriminated against plaintiff."

Tested by the principles of law laid down in those cases, it cannot be said that there is no evidence of a substantial character to warrant a verdict for the plaintiff.

Two shippers of hoops and headings located at Des Arc testified that they shipped their products in box-cars which were also used for the shipment of hay, and that during the months of July, August and September, 1920, they got practically all the cars that they needed.

Other shippers of hay at Hazen, Ark., on the main line, testified that they practically got all the cars that they needed during these same months. Notwithstanding the testimony of the defendant's witnesses to the contrary, the jury had a right to accept as true the testimony of the witnesses for the plaintiff, and it is fairly inferable from their testimony that there was no unusual car shortage during the summer and early fall of 1920. If they secured practically all the cars necessary for the shipment of hay at Hazen, the jury might have found that there was a discrimination against the plaintiff in not sending cars over the branch line, 25 miles distant, for the purpose of shipping his hay. This view is strengthened when we consider that shippers of heading and hoops, who also used box-cars in the shipment of their products, obtained all the cars they needed during this same period of time.

It follows that the evidence for the plaintiff warranted a verdict in his favor, and the judgment will therefore be affirmed.