MIDLAND VALLEY RAILROAD COMPANY v. BARKLEY.

Opinion delivered February 14, 1927.

1. COURTS—INTERSTATE SHIPMENTS—JURISDICTION OF STATE COURTS.—Under the Interstate Commerce Act, § 22, a State court has jurisdiction of an action against a railroad for failure to furnish cars for use in interstate shipments of coal, in violation of Crawford & Moses' Dig., §§ 895, 951, since the Transportation Act (Acts of Cong. of Sept. 20, 1920) and act of Congress of Sept. 22, 1922, do not vest in the Interstate Commerce Commission exclusive power in the matter of distribution of coal-cars.

2. COMMERCE—JURISDICTION OF INTERSTATE COMMERCE COMMISSION.—A complaint alleging that the rules and orders of the Interstate Commerce Commission are unreasonable or unfair, or that they result in unlawful or unreasonable practice or in unjust discrimination or undue prejudice to shippers, would involve an administrative question over which the Interstate Commerce Commission alone would have jurisdiction.

3. CARRIERS—DUTY TO FURNISH CAR SERVICE.—Under the Interstate Commerce Act (U. S. Comp. Stat. § 8563 et seq.) it is the duty of a carrier by railroad to make just and reasonable distribution of cars for transportation of coal among the coal mines served by such carrier, and, when the supply of cars available for service does not equal the requirements of the mines, it is the duty of the carrier to maintain just and reasonable ratings of such mines and count against such mines each car furnished for transportation of coal.

4. CARRIERS—DUTY TO FURNISH CAR SERVICE.—The law requires a carrier to make reasonable effort to provide instrumentalities for

accommodating the business of the localities which it assumes to serve.

5. APPEAL AND ERROR—INVITED ERROR.—Appellant cannot on appeal complain that the court submitted an issue which it requested to be submitted to the jury.

6. TRIAL—CAUTIONARY INSTRUCTIONS.—A cautionary instruction telling the jury "if the majority are for the defendant (appellant) the minority ought to seriously ask themselves whether they may not be reasonable and ought to doubt the correctness of their judgment" *held* not an invasion of the jury's province.

7. NEW TRIAL—MISCONDUCT OF JUROR.—Alleged misconduct of a juror in riding back and forth from his home during the progress of the trial in plaintiff's automobile, and paying for plaintiff's dinner as return for such courtesy, *held* insufficient to justify setting aside of verdict.

Appeal from Sebastian Circuit Court, Greenwood District; *John E. Tatum,* Judge; affirmed.

*O. E. Swan* and *Pryor, Miles & Pryor,* for appellant.

*U. C. May* and *Evans & Evans,* for appellee.

WOOD, J. Plaintiffs below, appellees here, instituted this action against the defendant below, appellant here, to recover damages for failure to furnish cars in which to ship coal from appellees' mine, located near Excelsior, in Sebastian County, Arkansas. Appellees alleged in substance that, in June, 1922, they were operating under a lease a coal mine on which they had expended and were expending large sums of money; that the appellant was an Arkansas corporation, having a line of railroad extending to appellee's coal mine, over which appellee shipped coal in carload lots; that, about the date above mentioned, when the appellees were preparing to mine and load one car of coal per day from their mine, the cars containing an average of 45 tons of coal each, the appellant demanded of the appellees that they sell to the appellant their output of coal at a price of $3.75 per ton, when coal was selling on the market at a much greater price; that appellant threatened appellees that, unless they sold their output of coal to appellants at the above price, the appellant would refuse to furnish appellees with coal-cars; that appellees refused to accede to the

demand of appellant, and appellant thereupon wrongfully refused to furnish the appellees coal-cars to ship the output of their mines, from August 1, 1922, until January 1, 1923, during which time the appellant only furnished to appellees twelve coal-cars. The appellees alleged that the refusal of appellant to furnish coal-cars compelled appellees to shut down their mine. Appellees then set forth in detail the damages alleged to have accrued to them by reason of the alleged wrongful failure of the appellant to furnish coal-cars as demanded by the appellees. The concluding portion of the complaint is as follows:

"But for the wrongful failure and refusal of defendant to furnish coal-cars as aforesaid, when and as requested and demanded by the plaintiffs, the plaintiffs would not have been compelled to give up their mine and lease, and plaintiffs could and would have mined, shipped and sold from their said mine from January 1, 1923, to September 1, 1923, a period of eight months, twenty cars of coal during each of said months, or a total of one hundred sixty cars of coal during said period, and plaintiffs could and would have realized thereon a net profit of seventy-five dollars per car, or a total profit of twelve thousand dollars.

"The plaintiffs have sustained damages in the total sum of $33,676, as hereinbefore set forth in detail, as approximate result of the defendant's wrongful failure and refusal to furnish plaintiffs coal-cars when and as requested and demanded by them in which to ship coal from their said mine. Wherefore the plaintiffs pray judgment against the defendant for the sum of $33,676, with interest, for costs of suit, and for all legal relief."

The appellant demurred to the complaint on the ground that it did not state a cause of action within the jurisdiction of the court, that "the act of Congress known as the Interstate Commerce Act, as amended by the Transportation Act and other acts of Congress amendatory thereof, confer exclusive authority upon the Interstate Commerce Commission in the matter of distribution

of coal-cars and jurisdiction in matters of alleged failure to furnish the same."

Appellant's demurrer was overruled, and it answered, denying specifically the allegations of the complaint. It was alleged in substance that, under the orders of the Interstate Commerce Commission, certain rules and regulations adopted by the United States Railroad Administration in December, 1923, were in effect during the period alleged in the complaint. The appellant alleged that the appellees' mine was what is termed a "wagon-load mine," in that the coal produced at the mine was hauled in a wagon to the spur or switch-track upon which it was loaded into the cars, and was therefore not rated as mines loaded from a tipple were rated under the rules of the Interstate Commerce Commission. Appellees then set forth certain bulletins issued under the rules and regulations of the Interstate Commerce Commission fixing the rates for tipple mines, which it attached to its answer, and made exhibits thereto. The appellant alleged that, notwithstanding the appellees' mine was without a rating for furnishing cars under the orders and rules of the Interstate Commerce Commission, the appellant did furnish appellees cars in which to load their coal, but, acting under the orders of the Interstate Commerce Commission, when unable to obtain a sufficient supply of open cars or regular coal-cars, appellant furnished to appellees box-cars in which to ship their coal, until the appellees finally refused to use such cars. The appellant further alleged that, from August 1, 1922, to January 1, 1923, there was an unusual and unprecedented and unforeseen demand for cars in which to ship coal on appellant's railroad, and that appellant was therefore unable to supply the demand for cars to ship coal from wagon-load mines, and was not able to supply the demand for cars to mines that loaded directly into the cars by use of tipple. The appellant also set up that the claim of the appellees for damages accruing one year prior to the filing of the complaint was barred by the statute of limitations.

The testimony is exceedingly voluminous, and we deem it wholly unnecessary to set forth the testimony bearing upon the issue as to whether or not the appellant failed to furnish cars as alleged in the complaint, and, if so, the amount of damages appellees sustained by reason of such failure, because, if the trial court had jurisdiction of the action, we are convinced that the testimony was amply sufficient to sustain the verdict on the issue of whether or not the appellant failed to furnish cars and also as to the amount of damages which accrued to appellees by reason of such failure. The trial resulted in a verdict and judgment in favor of the appellees in the sum of $2,000. Judgment was entered in favor of the appellees for that sum, from which is this appeal.

1. Section 402 of what is designated as the Transportation Act of Congress, February 28, 1920, amends § 1 of the Interstate Commerce Act, approved May 29, 1917, to read as follows:

"(10). The term 'car service' in this act shall include the use, control, supply, movement, distribution, exchange, interchange and return of locomotives, cars, and other vehicles used in the transportation of property, including special types of equipment, and the supply of trains, by any carrier by railroad subject to this act.

"(11). It shall be the duty of every carrier by railroad subject to this act to furnish safe and adequate car service and to establish, observe, and enforce just and reasonable rules, regulations, and practices with respect to car service; and every unjust and unreasonable rule, regulation, and practice with respect to car service is prohibited and declared to be unlawful."

Paragraph (12) makes it the duty of carriers by railroads to make just and reasonable distribution of cars for transportation of coal among the coal mines served by them, whether located upon their own lines or lines dependent upon them for car supply. When the car supply is not equal to the requirements of the mines, it is the duty of the carriers to maintain and supply just and rea-

sona'ble ratings of such mines and to count each and every car furnished to or used by any such mine for transportation of coal, against the mine, and a penalty is attached for failure to comply with this provision.

Under paragraph 13 the Interstate Commerce Commission is authorized to order any or all carriers by railroad subject to the act to file with the Commission, from time to time, their rules and regulations with respect to car service, which rules and regulations shall be incorporated in their schedules, showing rates, fares and charges for transportation, and making the carrier subject to all provisions of the act.

Under paragraph No. 14 the Commission may, after hearing on a complaint, or upon its own initiative, establish reasonable rules, regulations and practices with respect to car service by railroads subject to the act, and prescribe a penalty for nonobservance of these rules, etc.

Under paragraph 15, whenever the Commission is of the opinion that shortage of equipment, congestion of traffic, or other emergency exists, with or without complaint, or on its own initiative and with or without notice to the carrier, and without hearing or filing of report, it is empowered (a) to suspend the operation of any or all rules, regulations, or practices then established with respect to car service, for such time as may be determined by the Commission; (b) to make such just and reasonable direction with respect to car service, without regard to the ownership, as between carriers of locomotives, cars, and other vehicles, during such emergency, as, in its opinion, will best promote the service in the interest of the public and the commerce of the people, upon such terms of compensation as between the carriers as they may agree upon, or, in the event of their disagreement, as the Commission may, after subsequent hearing, find to be just and reasonable, etc. 41 U. S. Statutes at Large, ch. 91, p. 476, § 402.

By an act of Congress, September 22, 1922, 42 U. S. Statutes at Large, p. 1025, an act was again passed entitled "An act to declare a national emergency

to exist in the production, transportation, and distribution of coal and other fuel, granting additional powers to the Interstate Commerce Commission, providing for the appointment of a Federal Fuel Distributor, providing for the declaration of car-service priorities during the present emergency,'' etc.   Section 2 of that act provides, in part, as follows:

"That the powers of the Interstate Commerce Commission, under the act entitled 'An act to regulate commerce', approved February 4, 1887, as amended, including the Transportation Act, 1920, and especially under § 402 of said Transportation Act, 1920, are, during the aforesaid emergency, enlarged to include the authority to issue, in transportation of coal or other fuel, orders for priorities in car service, embargoes, and other suitable measures in favor of or against any carrier, * * * and to take any other necessary and appropriate steps for the priority in transportation and for the equitable distribution of coal or other fuel so as best to meet the emergency and to promote the general welfare, and to prevent, upon the part of any person, partnership, association or corporation, the purchase or sale of coal or other fuel at prices unjustly or unreasonably high. This act shall not be construed as repealing any of the powers heretofore granted by law to the Interstate Commerce Commission, but shall be construed as conferring supplementary and additional powers to said Commission and as an amendment to § 1 of the Interstate Commerce Act, and subject to the limitations and definitions of commerce controlled by said act, and all powers given said Interstate Commerce Commission shall be applicable in the execution of this act.''

Learned counsel for the appellant contend that it was the purpose of Congress, in the above enactments, to vest the Interstate Commerce Commission with supreme power in the matter of distribution of coal-cars, regardless of whether the coal was to be shipped in intra or interstate commerce.   Counsel for appellant say: ''It is the contention of the defendant that all State statutes

and common-law obligations are swept away, as far as the transportation of coal, or the furnishing of cars in which to transport the same, by the provisions of the Transportation Act, and the later emergency act of September 22, 1922.'' We cannot agree with counsel in this contention.

Section 8 of the Interstate Commerce Act, 24 Statutes at Large, p. 379 (1 Supp. to Revised Statutes of the United States, 529) provides as follows: ''That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done, any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act,'' etc.

Section 9 provides that ''any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the Commission, as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction.''

Section 22 provides in part as follows: ''And nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.''

These provisions of the Interstate Commerce Act, approved February 4, 1887, were not repealed, expressly or by implication, by the provisions of the Transportation Act of Congress of February 8, 1920, and the Emergency Act of September 22, 1922, upon which counsel for appellant relies. On the contrary, the above provisions of §§ 8, 9 and 22 of the Interstate Commerce Act were in full force and effect when appellee's cause of action is alleged to have accrued. Counsel for the appel-

lees concede that the cars which it is alleged appellant failed to furnish were ordered for and to be used in interstate shipments. Such being the case, the provisions of § 22 of the Interstate Commerce Act *supra,* confer jurisdiction upon the State court. The question, we believe, is thoroughly settled against the contention of counsel for the appellant by decisions of the Supreme Court of the United States.

In *Pennsylvania Railroad Co.* v. *Puritan Coal Mining Co.,* 237 U. S. 121, Mr. Justice Lamar, speaking for the court, said: "But §§ 8 and 9, standing alone, might have been construed to give the Federal courts exclusive jurisdiction of all suits for damages occasioned by the carrier violating any of the old duties which were preserved and the new obligations which were imposed by the commerce act. And, evidently for the purpose of preventing such a result, the proviso to § 22 declared that 'nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.' * * * But for this proviso to § 22, it might have been claimed that, Congress having entered the field, the whole subject of liability of carrier to shippers in interstate commerce had been withdrawn from the jurisdiction of the State courts, and this clause was added to indicate that the commerce act, in giving rights of action in Federal courts, was not intended to deprive the State courts of their general and concurrent jurisdiction." It was further declared in that case concerning §§ 8, 9 and 22 of the Interstate Commerce Act, construing the same as a whole, that "it did not supersede the jurisdiction of State courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the Commission, or relate to a subject as to which the jurisdiction of the Federal courts had otherwise been made exclusive."

And in the case of *Pennsylvania Railroad Co.* v. *Sonman Shaft Coal Company,* 242 U. S. 120, Mr. Justice Van

Devanter, speaking for the court, among other things, said: "Thus we have held that a manifest purpose of the provision in § 22 is to make it plain that such 'appropriate common-law and statutory remedies' as can be enforced consistently with the scheme and purpose of the act are not abrogated or displaced." Then, after reviewing and reiterating the doctrine of the above case of *Railroad* v. *Puritan Coal Co., supra,* and other cases, he further says: "Applying these rulings to the case in hand, we are of the opinion that a State court could entertain the action consistently with the Interstate Commerce Act. Not only does the provision in § 22 make strongly for this conclusion, but a survey of the scheme of the act and of what it is intended to accomplish discloses no real support for the opposing view."

In *Texas & Pacific Railway Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, at page 446, Chief Justice White, speaking for the court, concerning § 22 of the Interstate Commerce Act, *supra,* said: "This clause, however, cannot be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot destroy itself. The clause is concerned alone with rights recognized in or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative when other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act."

The case of *Midland Valley Railroad Co.* v. *Hoffman Coal Co.,* 91 Ark. 180, was an action by the coal company against the railroad company to recover damages for an alleged failure of the railroad company to furnish cars for shipment of coal for interstate shipments. The jurisdiction of the State court was challenged in that case, as it is in this. We quoted the above clause from *Railway* v. *Abilene Cotton Oil Company,* and, among other things, said: "The case now under consideration involves the

liability of the carrier to the shipper for an alleged breach of its common-law or contractual duty for its failure to furnish cars, and does not involve any infraction of the provisions of the interstate commerce act; and we are of the opinion that the suit was properly brought in the State court.   This view, we think, is the logical result to be deduced from the reasoning of the authorities cited above and from the opinion of this court in the case of *Halliday Milling Co.* v. *La. & N. W. Rd. Co.,* 80 Ark. 536. Hence the court properly overruled the demurrer to the jurisdiction of the court.''

The appellant sets up in his answer and makes an exhibit thereto various orders and rules of the Interstate Commerce Commission and the rules adopted by the United States Railroad Administration relating to the supply and distribution of coal-cars, which were in effect during the period covered by the appellees' action.  We deem it wholly unnecessary to set out and comment upon these rules and the authorities upon which the appellant relies to support its contention that the State court was without jurisdiction.  We have examined all these rules and considered the authorities, and especially the decision of the Interstate Commerce Commission in the case of *Interstate Commerce Commission* v. *Victor American Fuel Co. and Salt Lake Rd. Co.,* of July 20, 1926, and we are convinced that these authorities have no application. As we construe the complaint, no attack is made by the appellees upon the rules and orders of the Interstate Commerce Commission relating to the supply and distribution of cars by railroads for the shipment of coal.  We cannot discover in the complaint any allegation to the effect that the rules and orders of the Interstate Commerce Commission are unreasonable or unfair, that these rules themselves result in unlawful or unreasonable practice or in unjust discrimination or undue prejudice to shippers.  That would involve an administrative question over which the Interstate Commerce Commission alone would have jurisdiction.

As is said in *Penn. Rd. Co.* v. *Puritan Coal Co., supra,* at page 131: "In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust, no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. * * * But if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the court being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the State or Federal courts."

The Interstate Commerce law which we have quoted above makes it the duty of carriers by railroads to make just and reasonable distribution of cars for transportation of coal among the coal mines served by such carrier, and, when the supply of cars available for service does not equal the requirements of the mines, it is the duty of the carrier to maintain and apply just and reasonable ratings of such mines and count against such mine each and every car furnished for transportation of coal. It is the duty of the carrier, under the Interstate Commerce Act, to furnish safe and adequate car service and to establish, observe and enforce just and reasonable rules, regulations and practices with respect to car service.

This is purely an action against the appellant company for its failure to furnish cars, which is its common-law and statutory duty, both Federal and State. But the allegations of this complaint show that this action is bottomed upon appellant's alleged failure to comply with its common-law or contractual, as well as statutory, duty

to furnish cars under §§ 895 and 915, C. & M. Digest. According to the above decisions of the U. S. Supreme Court and our own court, appellees had the right to maintain this action under § 22 of the Interstate Commerce Act. It follows that the court did not err in overruling the appellant's demurrer to the complaint.

2. No useful purpose could be subserved by setting forth and commenting upon the separate instructions given by the court, constituting its charge as a whole to the jury, in submitting the issue of appellant's alleged failure to furnish cars. The appellant, in its prayer for instruction No. 1, asked the court to instruct the jury to return a verdict in its favor, which prayer the court refused, and the ruling was correct. In its prayers for instructions numbered 2 and 3, and in a modification of prayer for instruction by the appellee, the court, in effect, told the jury that the burden was upon the appellee to prove that the appellant, in failing to furnish cars, had violated the act of Congress of February 28, 1920, known as the Transportation Act, and the rules and orders of the Interstate Commerce Commission pursuant thereto, concerning the supply and distribution of coal-cars, and, if the jury so found, their verdict should be for the appellant. It follows, from what we have already said in discussing the question of jurisdiction, that the court erred in granting these prayers for instruction, but they were granted at the request of the appellant. The only issue, as we have seen, that the court should have submitted to the jury was whether or not the appellant wrongfully failed, neglected or refused to furnish the appellees cars for the shipment of coal from their mines, and, if so, the amount of damages appellees were entitled to recover by reason of such neglect, refusal or failure. The court submitted this issue to the jury, in instructions at the request of the appellees, in substantial conformity with the law as announced by this court in numerous decisions; some of the more recent being *Gage* v. *Arkansas Central Rd. Co.*, 160 Ark. 402, 254 S. W. 665; *C. R. I. & P. Ry. Co.* v. *Simms*, 161 Ark. 289, 256 S. W. 33; and *Express Co.* v.

*Bald Knob Fruit Exchange*, 162 Ark. 588, 258 S. W. 995. In the last case we said: ''The law requires a carrier to make reasonable effort to provide instrumentalities for accommodating the business of the localities which it assumes to serve. This is not merely a statutory requirement, but it is an elementary principle originating in the common law.''

The instructions which the court gave, both at the instance of the appellant and the appellees, fairly submitted the issues to the jury, and the appellant is in no attitude to complain because the instructions which the court gave at its request introduced the issue of whether or not the appellant had violated the Interstate Commerce Act of February 28, 1920, and the rules and orders of the Interstate Commerce Commission pursuant thereto. We are convinced that the appellant was not prejudiced by these rulings of the court in its favor, because there was testimony in the record to have warranted the verdict of the jury, even if the action had been based on violation of the Interstate Commerce Act and the orders and rules of the Commission passed pursuant thereto, it being assumed that those rules were, on their face, in every respect fair and reasonable.

3. It would unduly extend this opinion to set out all the instructions constituting the court's charge. It suffices to say that we find no error prejudicial to appellant, when the charge is carefully analyzed as a whole. Instruction No. 6 of the instructions given by the court on its own motion is a cautionary instruction, which the appellant contends is the same instruction as that condemned by us in the case of *McGehee & Co.* v. *Fuller,* 169 Ark. 920, 277 S. W. 39. The special language of the instruction in the Fuller case complained of is as follows: ''On the other hand, if a majority are for the defendant, the minority ought to doubt the correctness of their judgment, which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows.'' The language of the instruction which

the appellant asks us to condemn in the present case is as follows: "And, on the other hand, if a majority are for the defendant, the minority ought to seriously ask themselves whether they may not be reasonable and ought to doubt the correctness of their judgment which is not concurred in by most of those with whom they are associated and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

After a careful comparison of the instructions, we are convinced that the language is not the same as that used in the Fuller case, and the instruction in the present case does not invade the province of the jury. It does not direct or advise the minority of the jury that it is their duty to yield their own independent judgment to that of the majority. The language of the instruction quoted in effect but tells the jury that it is the duty of the minority to seriously compare their own views with the views of the majority and determine, in the light of the evidence, whether it is more reasonable that the majority should be mistaken in its conclusion than the minority. This part of the instruction, taken in connection with the other part thereof, is but cautionary to the jury, and tells them to endeavor to arrive at a verdict by reconciling, if possible, their conflicting views, but without any of them surrendering their own convictions for the sake of arriving at a verdict by mere acquiescence in the judgment of his fellows, without being really convinced of the correctness of such judgment. The instruction is not out of harmony with what we have said concerning cautionary instructions in the case of *McGehee & Co.* v. *Fuller, supra,* and in *St. L. I. M. & S. R. Co.* v. *Carter,* 111 Ark. 272, 164 S. W. 715; *Simonson* v. *Lovell,* 118 Ark. 81, 175 S. W. 407; and *St. L. I. M. & S. R. Co.* v. *Devanty,* 98 Ark. 83, 135 S. W. 802. Indeed, the instruction under consideration follows substantially the instructions that were considered and approved by the Supreme Court of the United States in the case of *Allen* v. *United States,* 164 U. S. 492-501, which were taken literally from a

charge approved by the Supreme Court of Massachusetts in *Commonwealth* v. *Tuey,* 8 Cushing 1, and by the Supreme Court of Connecticut in *State* v. *Smith,* 49 Conn. 376, 386.

4.  We have carefully examined the record concerning the alleged error of the trial court in refusing to set aside the verdict on account of the alleged misconduct of one of the members of the jury. One of the plaintiffs lived in the same neighborhood with the juror whose conduct is challenged, both of them living in the country some ten or twelve miles from the county seat. This plaintiff, during the progress of the trial, and after the cause was finally submitted to the jury for its determination, allowed the juror whose conduct is challenged to ride back and forth in this plaintiff's car. Other persons accompanied them. The juror, as a return for this courtesy and kindness on the part of this plaintiff, paid for the plaintiff's dinner. It is not shown that there was any conversation between the juror and this plaintiff in regard to the case. All the parties who accompanied plaintiff back and forth in the car were required to be in attendance at court. Counsel for the appellant, who made the motion to set aside the verdict on this ground, stated that he knew the juror intimately and did not claim or allege any corruption or corrupt motives on his part; he was as far from that as any one, and counsel wanted the record to so show. Such being the facts, we are unwilling to say that the integrity of the trial was destroyed by the alleged misconduct of the juror. It cannot be said, under the showing made, that the plaintiff was endeavoring to influence in his favor the mind of this juror. It was conceded, and the court found, that the juror was a man of unimpeachable integrity.

In the case of *St. L. S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428, 185 S. W. 768, we quoted from *Brookhaven Lumber & Mfg. Co.* v. *Ill. Central Ry. Co.,* 68 Miss. 432, 10 So. 66, as follows: "While it cannot be too strongly insisted that the stream of justice shall be kept pure— so pure as to afford no suspicion of corrupt or improper

intermingling of any foreign or hurtful matter—yet it must not be forgotten that no mere irregularities of behavior in this day of greater and wiser freedom for jurors, at least in civil trials, will be permitted to disturb the stability of judicial procedure." See also *Bealmear* v. *State,* 104 Ark. 616, 150 S. W. 129. In *Jetton* v. *Toby,* 62 Ark. 91, 34 S. W. 533, we held that the "treating, feeding, or entertaining of jurors by the parties or their counsel during .the progress of a trial in a cause in which they had been selected as a jury, whatever the motive might be, is highly improper and deserves severe condemnation." But in that case we did not set aside the verdict because of the alleged misconduct, and it occurs to us it would be going too far, under the facts proved in this case, to attribute a corrupt motive to the conduct of the plaintiff and the juror involved. Counsel for appellant could hardly expect the trial court and this court to believe that a corrupt motive instigated the conduct, when counsel himself did not so believe. This we would have to do before we would be justified in setting aside the verdict.

Upon the whole case we find no reversible error in the rulings of the trial court, and the judgment is therefore affirmed.