HEMPSTEAD COUNTY *v.* GILBERT.

Opinion delivered September 29, 1930.

*L. F. Monroe, Wm. S. Atkins* and *U. A. Gentry,* for appellant.

BUTLER, J. Action in the circuit court of Hempstead County by appellee, J. Gilbert, against the appellant, Hempstead County, for damages occasioned by construction of highway across a parcel of land owned by appellee. Trial before a jury and verdict and judgment for $600. Appeal prosecuted by Hempstead County to this court.

The testimony regarding the damages to the property involved is sufficient to sustain the verdict and judgment, and about which there is but little conflict. The appellant, however, contends for a reversal of the case because of the court's failure and refusal to grant prayers for instructions numbered 1, 2, 3, 4 and 5 requested by it. These instructions, except instruction No. 5, are based on the theory that there was evidence to show that the property damaged had been acquired by the appellee Gilbert after its appropriation as a right-of-way by the highway commission and after notice of such appropriation had been brought home to him, and that he was barred from prosecuting his claim for damages because of his failure to file a claim for such within twelve months after notice of the condemnation proceeding.

The appellee, Gilbert, purchased the land in controvery about the first of September, 1928, from Ben Ed-

miaston and wife and W. B. Hederick and wife, the deed being executed about the 10th of that month, and filed his claim for damages May 31, 1929. At the time of his purchase there were certain markers placed across the land which, he was informed by one of his grantors, were placed by surveyors as the proposed route for a highway which was to be built across the property. The contention of the appellant county is that this was notice to Gilbert that an appropriation of this right-of-way had been made, and that the order of the county court appropriating and condemning the right-of-way had been made on March 17, 1928, prior to the time of Gilbert's purchase, and that his claim for damages was not filed within twelve months after the making of such order, and that, therefore, his claim was barred under that provision of our statutes, (C. & M. Dig., § 5249) as construed in the case of *Greene County* v. *Hayden,* 175 Ark. 1067, 1 S. W. (2d) 803, providing that claims for damages must be filed with the county court within twelve months from the time of the making of the order by the county court and after notice of same to the landowner. The only evidence tending to establish the time at which the order of condemnation was made was the testimony of the county clerk and the records of the county court which were introduced in evidence by him. The order of condemnation, in its opening paragraph contains the following recital: "On this the 17th day of May, 1928, is presented to this court the petition of the State highway commissioner of the State of Arkansas *et cetera.*" The petition, however, upon which the order aforesaid was based was not filed with the clerk of the court until September 28, 1928, and the clerk testified that it did not come into his hands or into his office before that date. March 17, 1928, was a day of a regular term of the county court, and the records and testimony of the clerk are to the effect that there was no docket entry or any other record in that court disclosing that any order regarding the highway in question or any other highway was made

or entered at that term. The original petition bearing the file mark, "September 28, 1928," was introduced in evidence, and upon it was indorsed this notation: "April 15, 1929, Granted—John L. Wilson, Judge." Upon that date the order first mentioned was entered of record.

From all of this we conclude that the appellant errs in its contention that the order was made on March 17, 1928, for all of the evidence, as we see it, refutes that position and clearly indicates that the petition and order were prepared contemporaneously—perhaps, on March 17, 1928—but, for some reason undisclosed, the petition was not filed until the September following, and then not acted upon or the order made until the date that it was entered on the record of the court, namely, April 15, 1929, and the date appearing in the order merely occurred from entering the order as first written without changing the date of its recital to the true date when the prayer of the petition was granted and the order made. These being the facts in the case, the whole fabric of appellant's contention falls, for from this it is certain that appellee Gilbert had purchased and was the owner of the land in controversy before the date of the order condemning the right-of-way, and that his claim for damages was filed within twelve months from the date of such order and within the time prescribed by law. The court therefore correctly refused instructions Nos. 1, 2, 3 and 4 requested by the appellant.

During the progress of the trial the appellant maintains that it offered to introduce in evidence, as tending to establish as a circumstance to be considered by the jury in arriving at the value of the property, the assessed valuation of the land for the year 1928, which testimony was overruled by the court. This action of the court is assigned as error. If, indeed, the rule laid down by this court in the case of *Texas & St. Louis Ry. Co.* v. *Eddy,* 42 Ark. 527, and followed in a number of our decisions that a tax assessment of land is not admissible as evidence of its value in assessing damages for right-of-way has been

changed by act No. 205 of the Acts of the General Assembly of 1929, as contended by appellant (a question which we deem it now unnecessary to decide), the trial court committed no error, because as a matter of fact no testimony showing the assessed valuation of the land herein involved was offered. The clerk of the county court was called and brought with him the real estate tax book for the year 1928 showing the last assessment of land made in the county. He was asked to turn to § 8, township 9 south, range 26, and stated in answer to a question, that he found no assessment at all against either W. B. Hederick or J. Gilbert; that he did find an assessment of a parcel of land in that section in the name of Kendrick and Edminson, the description of the land assessed being "Part of SE SE, 1 acre." He was then asked to state the value as shown by the assessment, to which objection was made on the ground that there was no showing that the assessment was made by the plaintiff in the case or that he owned the land at the time. The objection was sustained.

Without passing on the question of the correctness of the ruling for the reasons given by the learned trial judge, we think the ruling proper because the land involved in this case mentioned in the claim for damages, as shown by deed to Gilbert which was introduced in evidence, was a parcel of land described by metes and bounds and lying in the northeast of southeast of section 8, township 9 south, range 26 west, an entirely different forty to that of the parcel, the assessed value of which was offered to be proved. For, as we have seen, that parcel lay in the southeast of the southeast of section 8. For this reason also instruction No. 5 asked by the appellant was properly refused, it seeking to submit for the jury's consideration in determining the market value of the property the assessed value of the land.

The case was submitted to the jury in the afternoon and the jury, after being out for about an hour, returned into court and announced that it had failed to agree. The

284

jury was allowed to separate with directions to report at 8:15 the following morning. At 8:20 on the following morning, the court being open and the jury present, the court admonished the jury as follows: "Now, gentlemen, I will state to you it is quite important, it seems to me, that this case ought to be settled. It would take time and expense to try it again, and I would like for you gentlemen to agree, if you can get together conscientiously, and return a verdict in the case." The judge then proceeded to instruct the jury that a verdict might be returned upon the agreement of nine jurors, stating to them in effect that he did not usually inform the jury that nine might return a verdict except where it appeared that twelve could not get together, and continuing, he said: "It is always, of course, advisable that every juror participate in the deliberations, and that all agree if they can, but if they find they cannot get together, why nine can return a valid and legal verdict. So, I am telling you that, gentlemen, so that if you don't all get together unanimously, if nine of you get together upon a verdict, you can act accordingly," and in response to a question by a juror, instructed the jury that where a verdict is made by nine, each should sign his name to it.

The trial judge apparently was not aware that any attorneys were present, for he concluded by saying, "I am doing this in the absence of attorneys on either side, but I am taking the responsibility and making a record of it here in court. The question in regard to this matter occurred at 8:20 this morning. I dismissed this jury and asked them to return at 8:15. So it was at a time when the jury were expected to be here and counsel were put on notice yesterday." The judge was mistaken regarding the absence of the attorneys, for it is disclosed by the record that one representing the appellant excepted to the instruction of the court given with reference to the right of the jury to return a verdict upon the agreement of nine, "first, for the reason that the language of the court stating to the jury that it is important that they

reach a decision in this case, and that a second trial would be expensive, is not proper and tends to influence the jury to arrive at a verdict against their judgment; second, * * * for the reason that the case had been closed, argument of counsel had been made and the instructions of the court given, and the jury retired to consider their verdict, and later in open court announced that they were hung, and the defense contends that the instruction should not have been given after the case had been submitted to the jury and it was determined that they had failed to arrive at a verdict."

As is said in *St. L. I. M. & S. R. Co.* v. *Carter,* 111 Ark. 284, 164 S. W. 715: "The rule is well settled in this State that the trial court may detail to the jury the ills attendant on a disagreement and the importance of coming to an agreement. The trial judge should not, by threat or entreaty, attempt to influence the jury to reach a verdict. He should not, by word or act, intimate that they should arrive at a verdict which is not the result of their free and voluntary opinion, and which is not consistent with their conscience. He may, however, warn them not to be stubborn and to lay aside all pride of opinion and to consult with each other and give due regard and weight to the opinion of their fellow-jurors." We do not think that the language of the trial judge in his admonition to the jury violated this rule, and that, while calling attention to the importance of reaching a verdict and the time and expense a disagreement might entail, there was no element of threat or entreaty by which the jury or any one of its members might have been influenced to reach a verdict not the result of their voluntary and untrammeled opinion or which would be inconsistent with their conscience. Since the adoption of the amendment to the Constitution by which a verdict in civil cases may be reached upon the agreement of nine of the jury, it might be well in each case, at the time of its submission, in instructing the jury on the form of their verdict, to inform them that such verdict might be rendered upon

the agreement of nine of the jurors. But we are unable to see how a litigant could be prejudiced by a failure to do this at the submission of the case and later on and during the time of the jury's deliberation to so instruct and inform them. However, we think the better practice would be to give the proper instruction as to the form of the verdict and how it might be returned when the case is first submitted to the jury.

The evidence being sufficient to warrant the amount of damage fixed, and, no error appearing on the face of the record, the judgment of the lower court is correct, and it is therefore affirmed.